IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FT. WORTH DIVISION

| | | |
|---|---|---|
| **INTERSTATE RESTORATION, LLC,** | § § § § § § § | |
| **Plaintiff,** | § § § | |
| | § § § | **CIVIL ACTION NO. _____** |
| **v.** | § § | |
| **KELLY DIXON,** | § § § § | |
| **Defendant.** | § § § § | |

**PLAINTIFF INTERSTATE RESTORATION, LLC'S**
**ORIGINAL COMPLAINT**

Plaintiff Interstate Restoration, LLC ("Interstate" or "Plaintiff") files this Original Complaint against Defendant Kelly Dixon ("Dixon" or "Defendant") in the above-entitled action and states as follows:

**I.  INTRODUCTION**

1. This Complaint is filed to prevent and/or remedy the harm to Interstate resulting from Defendant's breach of her valid and enforceable contractual obligations to refrain from unlawfully competing against Interstate and/or unlawfully soliciting its customers.

**II.  PARTIES, JURISDICTION AND VENUE**

2. Interstate Restoration, LLC previously employed Dixon. Interstate is a foreign limited liability company and a citizen of the state of Colorado. All of Interstate's members reside in, are domiciled in, and are likewise citizens of, Colorado.

3. Defendant Kelly Dixon is a citizen of the state of Florida. Kelly Dixon can be served at the following address: 2890 Grand Kemerton Place, Tampa, FL 33618.

4. The citizenship of the parties is completely diverse. The amount in controversy, as alleged in this Original Complaint, exceeds the jurisdictional minimum of this Court. Therefore, jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332. Moreover, Dixon has irrevocably consented to personal jurisdiction in the United States District Court for the Northern District of Texas, Fort Worth Division, for any matter arising out of the Restrictive Covenants Agreement she entered into with Interstate, dated July 8, 2019, or her employment with Interstate. *See* Exhibit A hereto.

5. Venue is also proper in this Court, because Dixon and Interstate have contractually agreed that venue for any actions arising out of the Restrictive Covenants Agreement and/or her employment with Interstate shall lie in the United States District Court for the Northern District of Texas, Fort Worth Division, regardless of where Dixon resided or performed her duties for Interstate.

### III. FACTS

6. This is an action against a former employee of Interstate to enforce restrictive covenants, and to remedy and prevent unfair competition.

7. After the termination of her employment at Interstate, Dixon became employed by Rapid Response Team, LLC, as a Regional Sales & Marketing Manager. Upon information and belief, Dixon is engaged in a scheme to unlawfully compete and divert business, customers, and/or other assets of Interstate to its direct competitor, Rapid Response Team, LLC. In so doing, Dixon has violated her express contractual obligations not to unlawfully compete with Interstate and not to unlawfully solicit its customers.

## Interstate's Business

8. Interstate is engaged in the highly-competitive business of commercial and residential restoration, remediation, and reconstruction.

9. In order to operate profitably, Interstate expends significant resources and time developing customers and customer relationships throughout the United States, including, but not limited to, throughout the State of Florida. Interstate has also invested substantial resources to develop and maintain its reputation and goodwill in the commercial and residential restoration, remediation, and reconstruction industry in the geographic markets it serves, including Florida.

10. It is critically important for Interstate to develop and maintain strong relationships with its customers and engender goodwill with them.

11. Interstate also develops and maintains confidential and proprietary information that contributes to its market position and success in the commercial and residential restoration, remediation, and reconstruction industry. This information includes, among other things, extensive customer and supplier data, including the identity, contact information, and pricing and payment terms for specific customers and suppliers.

12. Indeed, Interstate has expended considerable resources to (a) identify and solicit potential customers, (b) maintain and deepen its relationship with existing customers, (c) develop competitive yet profitable pricing strategies and models, (d) market its own brand and foster customer goodwill, and (e) train, motivate, and develop its employees. Individuals employed by Interstate who are engaged in sales and/or client service—as was Dixon—become inexorably and intimately knowledgeable of Interstate's customers, their businesses, their transactional data, and Interstate's costs and profit margins for each customer. The aforementioned information is valuable, confidential, and proprietary to Interstate, and is not generally known in the public

domain. The information has significant economic value to Interstate, and would be of significant economic value to competitors in the industry.

13. Interstate develops this confidential and proprietary information itself and develops still additional market information through its relationships with customers in the industry.

14. This confidential and proprietary information, which is not known or generally available in the industry, is extremely valuable to Interstate's competitive position in the market, and any competitor would derive an unfair business advantage through the unauthorized use or disclosure of Interstate's confidential and proprietary information.

15. Interstate's confidential and proprietary information related to customers is the product of Interstate's investment of time and resources over the course of years. Such information is confidential, proprietary information that Interstate protects, and which should it be disclosed to Interstate's competitors, would cause Interstate irreparable harm.

16. Interstate takes reasonable steps to ensure the secrecy of its confidential and proprietary information, including, but not limited to requiring employees with access to it to sign restrictive covenant agreements, using password protection for electronically stored information, etc.

17. Interstate has many long-standing relationships with numerous customers and has expended substantial time, money and effort in developing and maintaining such relationships. It is common for Interstate's customers to endure over a number of years and Interstate depends heavily on repeat and renewal business from its existing customers in order to sustain its profitability. Stated simply, new customers are extremely difficult to acquire and if properly served, are typically very loyal to an established provider such as Interstate.

**Dixon's Employment with Interstate**

18. From July 8, 2019 to June 18, 2021, Kelly Dixon was employed by Interstate as an Account Executive, who primarily operated in Interstate's Tampa, Florida and Orlando, Florida regions. As an Account Executive, Dixon was trained by Interstate to call upon its customers and/or potential customers in a manner to optimize potential sales and to strengthen customer relationships. Dixon would routinely work closely with Interstate's customers, learning about their preferences, their businesses and their particular business solution needs. Ultimately, Dixon's job duties involved creating goodwill for Interstate through personal contacts and business relationships with its customers and prospective customers.

19. Commensurate with her position with Interstate, and as an absolute perquisite to her ability to adequately perform her duties, Interstate provided Dixon with (and Dixon had regular access to and routinely reviewed and/or utilized) a substantial amount of Interstate's confidential and proprietary information throughout her employment term with Interstate. Dixon was also routinely provided access to Interstate's confidential information about its customers and prospective customers, in order to leverage and/or build upon the existing goodwill and/or create new goodwill between Interstate and its customers and prospective customers.

20. Interstate's confidential and proprietary information is of such a special, unique, extraordinary and/or intellectual character that it has an enormous value. Accordingly, if an employee such as Dixon accepted employment at a direct competitor (in a similar capacity, performing similar functions), that competitor would be in an excellent position to unlawfully reap the benefits of the Interstate proprietary knowledge entrusted to her regarding Interstate's customers and prospective customers. Thus, such actions would result in irreparable harm to Interstate.

21. On or about June 18, 2021, Dixon resigned from her employment with Interstate.

## Dixon's Agreement with Interstate

22. In connection with her employment with Interstate, Interstate required Dixon to enter into a Restrictive Covenants Agreement, which was designed to protect the value of Interstate's valuable assets, including, but not limited to its confidential and proprietary information, its existing customer relationships and its goodwill.

23. A true and correct copy of Dixon's Restrictive Covenants Agreement, dated July 8, 2019, is attached hereto as Exhibit A and incorporated herein.

24. In her Restrictive Covenants Agreement, Dixon agreed that upon the termination of her employment with Interstate, and for a period of one (1) year thereafter, she would (i) refrain from engaging in certain competition with Interstate, and (ii) refrain from soliciting certain customers of Interstate. S*ee* Exhibit A, paragraph 8.

## Dixon's Breach of her Restrictive Covenants Agreement

25. Immediately following her resignation from Interstate, Dixon breached her Restrictive Covenants Agreement by becoming employed with Rapid Response Team, LLC, a direct competitor of Interstate throughout Florida, including, but not limited to in the Tampa and Orlando, Florida regions. Upon information and belief, Dixon's position and responsibilities at Rapid Response Team, LLC are substantially similar to the position and responsibilities she had while employed at Interstate, and are being undertaken in the same territories in which she worked while employed by Interstate.

26. At no time leading up to her resignation did Dixon disclose to Interstate that she was preparing to immediately join a direct competitor, offer products and/or services in direct competition with Interstate, and/or pursue customers in direct competition with Interstate.

27.    After learning of Dixon's breach of her Restrictive Covenants Agreement, Interstate's counsel sent Dixon and Rapid Response Team, LLC letters to obtain assurances of compliance with Dixon's Agreements.  However, neither Dixon or Rapid Response Team, LLC responded, offered any assurances, or denied the alleged breach of the Dixon's Restrictive Covenants Agreement.

28.    All conditions precedent to this action have been performed and/or have occurred.

### IV.  CAUSES OF ACTION

### COUNT I
### BREACH OF DIXON'S RESTRICTIVE COVENANTS AGREEMENT
### (NON-COMPETITION COVENANT)

29.    Interstate re-alleges and incorporates by reference the allegations of paragraphs 1 through 28, as though fully set forth herein.

30.    Dixon's Restrictive Covenants Agreement constitutes a valid and enforceable contract.

31.    Interstate performed all of its obligations under the Restrictive Covenants Agreement.

32.    Non-compete agreements in Texas are governed by Sections 15.50-15.52 of the Texas Business and Commerce Code.  The restrictive covenants contained in Dixon's Restrictive Covenants Agreement meet all the requirements of Texas law, because they are ancillary to or part of otherwise enforceable agreements, they contain reasonable limitations as to time, geographical area, and scope of activity to be restrained, and they do not impose a greater restraint than is necessary to protect the goodwill or other business interests of Interstate.

33.    Dixon acknowledged and agreed, in paragraph 9 of the Restrictive Covenants Agreement, that the "restrictions contained in this Agreement are needed to protect reasonable

business interests of Interstate and are reasonable, as to time and geographic scope, because of the nature of Interstate's business and the locations of its competitors."

34. After the resignation of her employment at Interstate, Dixon became employed by Rapid Response Team, LLC, as a Regional Sales & Marketing Manager.

35. Rapid Response Team, LLC is a direct competitor of Interstate throughout Florida, including, but not limited to, in the Tampa and Orlando, Florida regions (*i.e.*, the same geographic areas in which Dixon worked for Interstate).

36. Upon information and belief, Dixon's position and responsibilities at Rapid Response Team, LLC are the same as and/or substantially similar to the position and responsibilities she had while employed at Interstate.

37. One or more employees of Interstate has recently observed Dixon engaging in sales, marketing, business development and/or other competitive activities on behalf of Rapid Response Team, LLC, within the Tampa and Orlando, Florida regions.

38. In so doing, Dixon has violated her express obligation not to compete with Interstate for one (1) year after her employment with Interstate terminated, as set forth in Dixon's Restrictive Covenants Agreement.   *See* Exhibit A, Section 8.

39. As a direct and proximate result of Dixon's breach and/or threatened breach of Dixon's Restrictive Covenants Agreement, Interstate has suffered and/or will suffer irreparable harm and/or other injury and damages (in an amount exceeding the jurisdictional minimum of this Court), including but not limited to lost investment, lost profits, damage to its customer relations, business reputation and goodwill, and for some of which injuries there is no adequate remedy at law.

**COUNT II**
**BREACH OF DIXON'S RESTRICTIVE COVENANTS AGREEMENT**
**(NON-SOLICITATION COVENANT)**

40. Interstate re-alleges and incorporates by reference the allegations of paragraphs 1 through 39, as though fully set forth herein.

41. Dixon's Restrictive Covenants Agreement constitutes a valid and enforceable contract.

42. Interstate performed all of its obligations under the Restrictive Covenants Agreement.

43. Non-solicit agreements in Texas are governed by Sections 15.50-15.52 of the Texas Business and Commerce Code. The restrictive covenants contained in Restrictive Covenants Agreement meet all the requirements of Texas law because they are ancillary to or part of otherwise enforceable agreements, they contain reasonable limitations as to time, geographical area, and scope of activity to be restrained, and they do not impose a greater restraint than is necessary to protect the goodwill or other business interests of Interstate.

44. Dixon acknowledged and agreed, in paragraph 9 of the Restrictive Covenants Agreement, that the "restrictions contained in this Agreement are needed to protect reasonable business interests of Interstate and are reasonable, as to time and geographic scope, because of the nature of Interstate's business and the locations of its competitors."

45. After the termination of her employment at Interstate, Dixon became employed by Rapid Response Team, LLC, as a Regional Sales & Marketing Manager.

46. Rapid Response Team, LLC is a direct competitor of Interstate throughout Florida, including, but not limited to, in the Tampa and Orlando, Florida regions (*i.e.*, the same geographic area in which Dixon worked for Interstate).

47. Upon information and belief, Dixon's position and responsibilities at Rapid Response Team, LLC are the same as and/or substantially similar to the position and responsibilities she had while employed at Interstate.

48. One or more employees of Interstate has recently observed Dixon engaging in sales, marketing, business development and/or other competitive activities on behalf of Rapid Response Team, LLC, within the Tampa and Orlando, Florida regions.

49. Interstate has received notice that one or more of its customers in the Tampa and/or Orlando, Florida regions, whom Dixon worked with while employed at Interstate, has recently switched its business from Interstate to Rapid Response Team, LLC, due to, on information and belief, Dixon's unlawful interference.

50. In so doing, Dixon has violated her express obligation not to solicit certain customers of Interstate for one (1) year after her employment with Interstate terminated, as set forth in Dixon's Restrictive Covenants Agreement. *See* Exhibit A, Section 8.

51. As a direct and proximate result of Dixon's breach and/or threatened breach of Dixon's Restrictive Covenants Agreement, Interstate has suffered and/or will suffer irreparable harm and/or other injury and damages (in an amount exceeding the jurisdictional minimum of this Court), including but not limited to lost investment, lost profits, damage to its customer relations, business reputation and goodwill, and for some of which injuries there is no adequate remedy at law.

## V.  REFORMATION

52. If the Court finds that any of the restrictive covenants contained in Dixon's Restrictive Covenants Agreement are too broad to be enforced, or otherwise unenforceable, Interstate specifically requests that any such covenants be reformed by the Court, so as to make the restrictions enforceable to the maximum extent allowed by law.

## VI.  PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Interstate respectfully prays that it be awarded all damages and relief to which it is entitled including, but not limited to the following:

(a) Any and all actual, accrual, expectancy, reliance, consequential, compensatory, special and/or restitution damages to which Interstate is entitled due to the unlawful actions of Dixon;

(b) Prejudgment and post-judgment interest at the maximum rate allowed by law;

(c) A temporary and permanent injunction enjoining and restraining Dixon, and anyone acting in concert with her or on her behalf, from continuing to violate the Dixon Restrictive Covenants Agreement;

(d) Any and all other relief to which Interstate is justly entitled; and

(e) **TRIAL BY JURY** on all matters so triable.

Dated: February 18, 2022

Respectfully submitted,

*/s/ Michael P. Royal*
Michael P. Royal (Attorney-in-Charge)
Texas State Bar No. 00784886
mroyal@littler.com

LITTLER MENDELSON, P.C.
2001 Ross Avenue
Suite 1500, Lock Box 116
Dallas, TX 75201-2931
214-880-8100
214-880-0181 (Facsimile)

ATTORNEYS FOR PLAINTIFF
INTERSTATE RESTORATION, LLC

4858-3018-8549.1 / 089191-1017